IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VANDERBILT UNIVERSITY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>ICOS CORPORATION, )<br>)<br>Defendant. )<br>) | Civil Action No.: 05-506-SLR |

**PLAINTIFF'S REPLY IN SUPPORT OF AND RESPONSE TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION REQUESTING EXTENSION OF FACT DISCOVERY DEADLINE SOLELY FOR PURPOSE OF CONDUCTING DEPOSITION OF DR. BARRY CLIVE ROSS**

Plaintiff, Vanderbilt University ("Vanderbilt"), by its undersigned counsel, replies in support of and in response to Defendant ICOS Corporation's Opposition to Plaintiff's Motion Requesting Extension of Fact Discovery Deadline Solely for Purpose of Conducting Deposition of Dr. Barry Clive Ross (the "Motion"), and states as follows:

1. This case arises from Vanderbilt University's claim that three of its scientists contributed to the conception of inventions reflected in U.S. patent numbers 5,859,006 and 6,140,329 (the "Patents-at-Issue"). Those patents were originally applied for by Laboratoire Glaxo Wellcome S.A., a subsidiary of Glaxo Group, Ltd. ("Glaxo"), which later assigned them to Defendant ICOS Corporation ("ICOS").

2. In requests for the production of documents served upon ICOS on December 2, 2005, Vanderbilt requested production of, among other things, the following:

**Request No. 18**: All documents relating or referring to Vanderbilt's provision of data, compounds, cGMP analogs, PDE5 inhibitors, test results, and/or any other documents or things to GLAXO relating to cGMP-binding phosphodiesterases, inhibitors thereof, cGMP analogs, erectile dysfunction, the Patents, the applications for the Patents, and/or the agreements attached as exhibits to the Complaint.

**Request No. 19**: All documents relating to GLAXO's use, study, and/or evaluation of data, compounds, cGMP analogs, PDE5 inhibitors, test results, and/or any other documents or things relating to cGMP-binding phosphodiesterases, inhibitors thereof, cGMP analogs, erectile dysfunction, the Patents, the applications for the Patents, and/or the agreements attached as exhibits to the Complaint, provided by Vanderbilt to GLAXO.

**Request No. 20**: All documents relating to GLAXO's participation in the invention of the inventions described in the Patents.

Of course, these requests, like the others served on ICOS by Vanderbilt, required ICOS to produce all documents within ICOS custody *or control*. ICOS responded on January 4, 2006 that it would produce all available documents.

3.   ICOS' initial production of documents was spread over several months. Curiously, notwithstanding the assignments of the Patents-at-Issue by Glaxo to ICOS, ICOS' production did not contain any documents from Glaxo relating to the conception of the inventions claimed in the Patents-at-Issue. However, on May 1, 2006, ICOS' counsel wrote to Vanderbilt's counsel:

> It appears we can obtain documents from Glaxo relating to the '006 and '329 patents. We are doing so, and intend to produce such documents to you as are

2

responsive to the discovery requests to the extent not objected to and not previously produced. We have no present understanding of what further documents will come from this. Also, we are not sure of the timeframe when this production, if any, will be completed;

A copy of this e-mail is attached as Exhibit "A" hereto.

4.  As of June 14, 2006, ICOS had yet to produce any Glaxo documents relating to the conception of the inventions claimed in the Patents-at-Issue. On June 14, 2006, Vanderbilt's counsel wrote to counsel for Glaxo inquiring as to the circumstances under which Glaxo would produce those documents to Vanderbilt. Glaxo's counsel responded on June 26, 2006 that he had been out of the office and would respond shortly. On July 6, 2006, having not heard a response from Glaxo's counsel, Vanderbilt's counsel wrote back asking for an immediate response. A copy of the entire exchange of e-mail messages is attached as Exhibit "B" hereto.

5.  Miraculously, on July 7, 2006, ICOS' counsel wrote to Vanderbilt's counsel that ICOS would be producing the Glaxo documents. A copy of that e-mail message is attached as Exhibit "C" hereto.

6.  Notwithstanding ICOS' July 7, 2006 e-mail, ICOS did not complete production of the Glaxo documents until October 2, 2006, exactly eleven (11) months after Vanderbilt served its Requests for Production of Documents and ten (10) months after ICOS responses to those requests were due. The entire "second production," consisted of 13,925 pages of documents, a significant number of which were in French.

7.  The 13,186th Glaxo document that ICOS produced is a memorandum from Dr. Barry C. Ross to, among others, Drs. Richard Labaudiniere and Francois Hyafil, who together headed up the French Glaxo laboratory with which Vanderbilt collaborated from 1992 through 1995, and where the sole named inventor of the inventions claimed in the Patents-at-Issue, Alain Daugan, worked. Handwriting on the memo indicates that it was also circulated to Pascal

3

Grondin, Anne-Charlotte Le Monnier de Gouville, and Jorge Kirilovsky, each of whom, together with Drs. Labaudiniere and Hyafil, are among the authors of the series of articles in the Journal of Medical Chemistry entitled *The Discovery of Tadalafil*. Faxed to those scientists along with the Ross memorandum was a copy of a research proposal submitted by Vanderbilt that contained information that was used in connection with the conception of the inventions claimed in the Patents-at-Issue. The memorandum indicates that the addressees were to discuss Vanderbilt's research on April 9, 1992, and indicated that the research would generate specific design concepts for the development of PDE 5 inhibitors. It is precisely Vanderbilt's contributions of such specific design concepts, some of which are set forth in the research proposal, that is the basis of Vanderbilt' claims in the instant case.

8.     Particularly in light of GLAX13186, Vanderbilt contacted Glaxo on October 13, 2006, with a request that Glaxo agree to make Dr. Barry C. Ross available for deposition. A copy of that e-mail message is attached as Exhibit "D" hereto. Glaxo responded that Dr. Ross was retired from Glaxo and, therefore, Glaxo was unable to secure Dr. Ross's appearance. A copy of that e-mail message is attached as Exhibit "E" hereto. Before pursuing compulsive process, Vanderbilt attempted to locate and contact Dr. Ross. Vanderbilt made contact with Dr. Ross on October 24, 2006. Initially, Dr. Ross indicated that he was prepared to make himself available. While waiting to hear from Dr. Ross, as a precaution, Vanderbilt filed a motion with the Court requesting the issuance of a Letter Rogatory for the purpose of seeking the assistance of courts in the United Kingdom, where Dr. Ross resides, to issue an order requiring his attendance at a deposition. Notwithstanding its current motion, ICOS did not oppose that motion and, on November 14, 2006, the Court granted the motion and issued the requested Letter Rogatory. On October 30, 2006 Dr. Ross advised Vanderbilt that, after consulting with Mark

Rachlin, Glaxo's attorney, Dr. Ross would not submit to a deposition without compulsory process.

9. At the deposition on November 2, 2006 of ICOS' Kenneth Ferguson, PhD., who also served as ICOS' Rule 30(b)(6) corporate designee, it was revealed that Dr. Ferguson has traveled to England to meet with Dr. Ross, and that Dr. Ross has been interviewed by ICOS' lawyers. However, ICOS refused to allow Dr. Ferguson to testify about the substance of his conversations with Dr. Ross, claiming, despite the fact that neither Dr. Ross nor his *former* employer are parties to this action, that such communications are protected from discovery by a "common interest" privilege. That improper failure to provide discovery will be the subject of a motion to compel that Vanderbilt will be filing in short order.

10. Had ICOS complied with its obligations under the Federal Rules and produced in January 2006 all documents responsive to Vanderbilt's requests for production of documents, including the Glaxo documents, Vanderbilt would have pursued efforts to depose Dr. Ross several months ago. In light of ICOS' unexcused delays in the production of those documents, had Vanderbilt conducted an earlier deposition of Dr. Ross Vanderbilt would have found itself in the position of having to request a second deposition to ask him questions regarding documents that ICOS just finished producing last month. Under the circumstances, Vanderbilt has acted with requisite diligence in seeking the deposition of Dr. Ross.

11. ICOS, in its opposition to the instant motion, takes pains to attack the merits of Vanderbilt's claims, asserting that none of the Vanderbilt Scientists communicated directly with the sole named inventor on the Patents-at-Issue, Alain Daugan. Not surprisingly, ICOS neglects to mention that all of three of the Vanderbilt Scientists testified that they conveyed their contributions to the inventions to Dr. Ross and Dr. Hyafil, who oversaw Monsieur Daugan's

work. Nor does ICOS note that there is no dispute that the contributions that Vanderbilt alleges were made by its scientists are reflected in the claims set forth in the Patents-at-Issue. Nor does ICOS mention that in its answers to Vanderbilt's interrogatories, ICOS conceded that ICOS does not contend that Monsieur Daugan is the sole inventor of the claimed inventions. Nor does ICOS point out that Dr. Richard Labaudiniere, the only member of the Glaxo French laboratory that is currently subject to deposition (having relocated to Massachussetts), has testified in deposition that he, not Monsieur Daugan, contributed the concept of using a beta carboline nucleus for the compounds identified in the Patents, and thus (1) established that he too is a co-inventor of the claimed inventions and (2) effectively removed any presumption that Monsieur Daugan is the sole inventor.[1]

12.   ICOS has waived any objection to a limited extension of the deadline for fact discovery by failing to file any opposition to Vanderbilt's Request for Issuance of Letters Rogatory. Unopposed, that motion was granted and the Court has issued a Letter Rogatory to the Courts of the United Kingdom asking that they issue an order permitting Dr. Ross' deposition to take place.

13.   ICOS does not deny that Dr. Ross may have knowledge that is relevant to the claims before the Court and, like Vanderbilt, identified Dr. Ross as such a person in ICOS' initial disclosures. ICOS was asked to consent to the request for the issuance of a Letter Rogatory and, had it consented (which would have been reasonable given the absence of any substantive objection), the Court would likely have issued the Letter Rogatory weeks ago and possibly in time for Dr. Ross' deposition to be conducted within the original fact discovery deadline.

---

[1] At the deposition of Eli Lilly Company's designee on November 15, 2006, it was revealed that ICOS has likewise failed to advise the Eli Lilly Company, which is currently contemplating the acquisition of ICOS, of these pertinent facts relating to the Patents-at-Issue

WHEREFORE Plaintiff, Vanderbilt University, for the foregoing reasons and those set forth in its Motion, respectfully requests that the Court grant its Motion Requesting Extension of Fact Discovery Deadline Solely for Purpose of Conducting Deposition of Dr. Barry Clive Ross.

Dated: November 16, 2006

BIFFERATO, GENTILOTTI,
BIDEN & BALICK, L.L.C.

/s/ Joseph K. Koury

Vincent A. Bifferato, Jr. (#2465)
Ian Connor Bifferato (#3273)
Joseph K. Koury (#4272)
1308 Delaware Avenue
Wilmington, Delaware  19806
(302) 429-1900

-and-

Robert S. Brennen
Donald E. English, Jr.
MILES & STOCKBRIDGE P.C.
10 Light Street
Baltimore, Maryland  21202
(410) 727-6464

*Attorneys for Plaintiff,
Vanderbilt University*