IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VANDERBILT UNIVERSITY,            )<br>                                                         )<br>              Plaintiff,                         )<br>                                                         )<br>    v.                                                )     Civil Action No.: 05-506-SLR<br>                                                         )<br>                                                         )<br>                                                         )<br>                                                         )<br>                                                         )<br>                                                         )<br>ICOS CORPORATION,                 )<br>                                                         )<br>              Defendant.                       )<br>                                                         ) | |

**PLAINTIFF'S MOTION FOR ORDER COMPELLING
DEFENDANT TO PRODUCE DOCUMENTS AND TESTIMONY**

Plaintiff, Vanderbilt University ("Vanderbilt"), by its undersigned counsel, hereby moves the Court, pursuant to Fed. R. Civ. P. 26(b)(3) and 37, for an Order compelling ICOS Corporation's ("ICOS"), to provide testimony and documents related to communications between ICOS and current and/or former Laboratoire Glaxo Wellcome S.A. employees in connection with the matters at issue in this litigation and in support thereof states as follows:

1.     This case arises from Vanderbilt University's claim that three of its scientists contributed to the conception of inventions reflected in U.S. patent numbers 5,859,006 and 6,140,329 (collectively, the "Patents-at-Issue"). Laboratoire Glaxo Wellcome S.A., a subsidiary of Glaxo Group, Ltd. ("Glaxo"), originally applied for these Patents-at-Issue and later assigned them to ICOS.

2.     On November 15, 2006, the undersigned sent an email to counsel for ICOS to inquire whether any ICOS employee or attorney has interviewed former and/or current Glaxo

employees from France in connection with the matters at issue in this litigation. On November 16, 2006, counsel for ICOS responded by stating that he would not confirm or deny the existence of any such communications with these employees and that the communications with these third-parties were somehow privileged. A copy of this email exchange is attached hereto as Exhibit "A". On information and belief, the current and former Glaxo employees who may have been participated in these communications all reside in France.[1]

3. In requests for the production of documents served upon ICOS on December 2, 2005, Vanderbilt requested production of, among other things, the following:

**Request No. 18**: All documents relating or referring to Vanderbilt's provision of data, compounds, cGMP analogs, PDE5 inhibitors, test results, and/or any other documents or things to GLAXO relating to cGMP-binding phosphodiesterases, inhibitors thereof, cGMP analogs, erectile dysfunction, the Patents, the applications for the Patents, and/or the agreements attached as exhibits to the Complaint.

**Request No. 19**: All documents relating to GLAXO's use, study, and/or evaluation of data, compounds, cGMP analogs, PDE5 inhibitors, test results, and/or any other documents or things relating to cGMP-binding phosphodiesterases, inhibitors thereof, cGMP analogs, erectile dysfunction, the Patents, the applications for the Patents, and/or the agreements attached as exhibits to the Complaint, provided by Vanderbilt to GLAXO.

---

[1] The following individuals are former or current Glaxo employees who all may have been interviewed by counsel for ICOS: Pascal Grondin, Alain Daugan, Herve Coste, Francois Hyafil, Jorge Kirilovsky, Anne-Charlotte Le Monnier de Gouville, Jean Michel Linget and Cecile Ruault. All of these witnesses worked and communicated with Vanderbilt scientists about the conception of the Patents-at-Issue.

**Request No. 20**: All documents relating to GLAXO's participation in the invention of the inventions described in the Patents.

4.  To the extent that any information obtained or derived from any communications between ICOS and current and/or former Glaxo employees are not protected by the attorney-client privilege or work-product doctrine, any documents or information that are responsive to Vanderbilt's document requests must be produced by ICOS pursuant to Federal Rule of Civil Procedure 26(e). To date, Vanderbilt has not received any documents related to any communications between ICOS and current and/or former Glaxo employees.

5.  Although counsel for ICOS claims that these communications with third-party witnesses are protected by the attorney-client privilege and the "common-interest privilege," Delaware law does not protect the disclosure of this information given the nature of these communications. Delaware has long recognized that the attorney/client privilege "protects the communications between a client and an attorney acting in his professional capacity where the communications are intended to be confidential, and the confidentiality is not waived." *Moyer v. Moyer*, 602 A.2d 68, 72 (Del.1992) citing *Riggs Nat. Bank of Washington, D.C v. Zimmer*, 355 A.2d 709, 713 (Del. Ch.1976). Delaware courts have stated, "the privilege extends to a (1) communication, (2) which is confidential, (3) which was for the purpose of facilitating the rendition of professional legal services to the client, (4) between the client and his attorney." *Ramada Inns, Inc v. Dow Jones & Co., Inc.*, 523 A.2d 968, 970 (Del. Super. Ct. 1986). The burden of proving that the privilege applies to a particular communication is on the party asserting the privilege. *Moyer*, 602 A.2d at 72.

6.  Generally, voluntary disclosure by the client or consent to disclosure of any significant part of the privileged matter operates as a waiver of the privilege. But there is no

waiver when the disclosing party and its recipient share some common legal interest, such as where they are co-defendants or are involved in or anticipate joint litigation. *See Union Carbide Corp. v. Dow Chemical Co.*, 619 F.Supp. 1036, 1047 (D.C.Del.1985) *citing SCM Corp. v. Xerox Corp.*, 70 F.R.D. 508, 513 (D.Conn.1976). However, the legal interest between the disclosing party and the recipient must be identical. As this Court has previously stated, "[t]he key consideration is that the nature of the legal interest be **identical, not similar, and be legal, not solely commercial**." *Id. citing Duplan Corp. v. Deering Milliken, Inc.*, 397 F.Supp. 1146 (D.S.C.1974) (emphasis added).

7. In Delaware, the common interest privilege only applies where the communications involve the discussion of defenses to an action or the formulation of the defense strategy. In *Corning Inc. v. SRU Biosystems, LLC*, this Court held that the common interest doctrine was not applicable where disclosures were not made in an effort to formulate joint defense, but rather to persuade a third-party to invest in defendant. 223 F.R.C. 189, 190 (D.Del. 2004); *see also Walsh v. Northrop Grumman Corp.*, 165 F.R.D. 16, 18 (E.D.N.Y. 1996) (holding that the common interest privilege "does not extend to communications about a joint business strategy that happens to include a concern about litigation").

8. Here, any communications between ICOS and current or former Glaxo employees are not protected by the attorney-client privilege or common interest privilege for several reasons. First, these communications are not subject to the attorney-client privilege because there is no confidential relationship between ICOS and these current and former Glaxo employees. Second, these communications are not privileged by virtue of any joint-defense agreement, because there is no joint-defense agreement between ICOS and these current and former Glaxo employees. Lastly, the communications are not covered by any "common-interest

privilege" because: (a) the current and former Glaxo employees and Glaxo are not and can not be parties to this litigation; and (b) the current and former Glaxo employees, Glaxo and ICOS do not have identical legal interests with respect to the claims raised in Vanderbilt's Complaint. As discussed above, Vanderbilt is not seeking any monetary damages in this case. Vanderbilt is simply requesting that the Court correct the Patents-at-Issue by adding the Vanderbilt scientists as co-inventors to the patent. As a result, Glaxo and their current and former employees have no legal interest in this litigation, much less, an identical legal interest to ICOS. As a result, these communications are not privileged.

9. Work product consists of "written materials obtained or prepared by an adversary's counsel with an eye toward litigation" and includes "interviews, statements, memoranda, correspondence, [and]...briefs." *Bogosian v. Gulf Oil Corp.*, 738 F.2d 587, 592 (3rd Cir. 1984). While it is essential that lawyers work free from unnecessary intrusion by opposing parties and their counsel, not all work-product will be barred from discovery. *See In re Cendant Corp Sec Litigation*, 343 F.3d 658, 663 (3rd Cir. 2003); *Hickman v. Taylor*, 329 U.S. 495 (1947) The work product doctrine is governed by a uniform federal standard set forth in Fed.R. Civ. P. 26(b)(3), which, in relevant part, provides:

> a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

As expressly provided in Fed. R. Civ. P. 26(b)(3), a party may reach the work product of opposing party upon a showing of 1) substantial need; and 2) the party would suffer 'undue hardship' in obtaining the substantial equivalent. *See Wright, Miller, & Marcus, Federal Practice and Procedure* § 2025 (2d ed. 1994). The Third Circuit has found substantial need to exist when witnesses with relevant information are unavailable. *See In re Grand Jury Investigation*, 599 F.2d 1224, 1231-1232 (3rd Cir. 1979) (finding sufficient necessity was demonstrated to overcome work-product protection afforded to deceased interviewee's questionnaire and interview memoranda prepared by corporation and its attorneys during an internal corporate investigation). The Fifth Circuit has found undue hardship when the expense of deposing the parties, while typically not sufficient to constitute undue hardship, is extremely high. *See International Systems & Controls Corp Securities Litigation*, 693 F.2d 1235, 1241 (5th Cir. 1982) (finding that the expense of deposing witnesses in foreign countries can constitute undue hardship).

9.      Vanderbilt is unable to obtain the "substantial equivalent of the materials" because French law prohibits Vanderbilt from taking compulsory discovery of French citizens. "Compulsory discovery of non-party foreigners may only be accomplished through use of the Hague Evidence Convention." *Rich v KIS California, Inc.*, 121 F.R.D 254, 258 (M.D.N.C. 1988). The Hague Convention allows contracting States, like France, to establish certain conditions applicable to foreigners seeking discovery within that State.[2] France has declared "that appearance [by its citizens] for the giving of evidence is voluntary and that non-appearance cannot lead to prosecution in the requesting State".[3]

---

[2] *See* Taking of Evidence Abroad Convention adopted at the Eleventh Session of the Hague Conference on Private International Law Convention art 16, 17 July 15, 1972, 23 U S T 2555, T I A S No 7444.
[3] *See* Hague Convention Reservation Declarations of France, *available at* http://www.hcch.net/index_en.php?act=status comment&csid=501&disp=resdn

10. Any information obtained or derived from these interviews that may be protected by the work-product doctrine is also discoverable pursuant to Federal Rule of Civil Procedure 26(b)(3) because Vanderbilt has no means to take any discovery from these French citizens. These current and former Glaxo employees may possess information critical to establishing any communications that Vanderbilt had with Glaxo relating to the invention of the Patents-at-Issue. As a result, Vanderbilt has a substantial need to obtain this information in the preparation of its case and Vanderbilt is unable, without undue hardship, to obtain the substantial equivalent of these materials by other means.

## RULE 7.1.1 CERTIFICATION

Undersigned counsel hereby certifies that Rule 7.1.1 of the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware have been complied with.

WHEREFORE Plaintiff, Vanderbilt University moves the Court for entry of an Order compelling ICOS to provide testimony and documents related to communications between ICOS and current and/or former Glaxo employees in connection with the matters at issue in this litigation.

Dated: November 22, 2006

BIFFERATO, GENTILOTTI,
BIDEN & BALICK, L.L.C.

Vincent A. Bifferato, Jr. (#2465)
Ian Connor Bifferato (#3273)
Joseph K. Koury (#4272)
1308 Delaware Avenue
Wilmington, Delaware 19806
(302) 429-1900

-and-

Robert S. Brennen
Donald E. English, Jr.
MILES & STOCKBRIDGE P.C.
10 Light Street
Baltimore, Maryland 21202
(410) 727-6464

*Attorneys for Plaintiff,*
*Vanderbilt University*