IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VANDERBILT UNIVERSITY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>)<br>)<br>)<br>)<br>ICOS CORPORATION, )<br>)<br>Defendant. )<br>) | Civil Action No.: 05-506-SLR |

**PLAINTIFF'S [REDACTED] MOTION FOR ORDER COMPELLING
DEPOSITION TESTIMONY OF KENNETH M. FERGUSON, PHD**

Plaintiff, Vanderbilt University ("Vanderbilt"), by its undersigned counsel, hereby moves the Court pursuant to Federal Rule of Procedure 37 for an Order compelling Kenneth M. Ferguson, PhD, ICOS Corporation's ("ICOS") Rule 30(b)(6) designee, to provide further testimony related to his non-privileged communications with third-parties related to this litigation, and in support thereof states as follows:

1. This case arises from Vanderbilt University's claim that three of its scientists contributed to the conception of inventions reflected in U.S. patent numbers 5,859,006 and 6,140,329 (collectively, the "Patents-at-Issue"). Those patents were originally applied for by Laboratoire Glaxo Wellcome S.A., a subsidiary of Glaxo Group, Ltd. (collectively, "Glaxo"), which later assigned them to Defendant ICOS. The inventions described in the Patents-at-Issue include, among thousands if not millions of others, the compound Tadalafil, currently marketed as the prescription erectile dysfunction medication *Cialis*®. The Patents-at-Issue currently name

only Alain Daugan, a chemist with Glaxo's French laboratory, as inventor of all of the covered inventions. Vanderbilt's Complaint requests that the Court issue an order directing the Commissioner of the U.S. Patent and Trademark Office ("USPTO"), pursuant to 35 U.S.C. § 256, to correct the two patents by adding the three Vanderbilt scientists as co-inventors of the patents.

2.   On October 12, 2006, ICOS was served with a Notice to Take Deposition of ICOS Corporation's Designee. A copy of the Notice is attached hereto as Exhibit "A." On November 2, 2006, counsel for Vanderbilt took the deposition of ICOS's Rule 30(b)(6) designee, Dr. Kenneth M. Ferguson. Portions of the transcript for Dr. Kenneth M. Ferguson's November 2, 2006 deposition (cited hereafter as "K. Ferguson Tr.") are attached hereto as Exhibit "B".

3.   At the deposition, Dr. Ferguson was asked about communications that occurred during a June 2006 meeting in London attended by Dr. Ferguson, counsel for ICOS, counsel for Glaxo, and Dr. Barry Ross. Dr. Ferguson testified that

[REDACTED]

4.   Counsel for ICOS instructed Dr. Ferguson not to respond to any questions regarding statements by Dr. Ross and others at that meeting based upon the presence of attorneys for ICOS, on the grounds of the attorney-client privilege and the "common-interest privilege." Counsel for ICOS conceded that (a) ICOS's counsel did not represent Dr. Ross, (b) Counsel for ICOS did not represent Glaxo, and (c) there is no joint defense agreement between Glaxo and ICOS.

[REDACTED]

5. At the time of the June 2006 communications, Dr. Ross was not an employee of Glaxo.

6. Similarly, Counsel for ICOS, at a meeting where this litigation was discussed, instructed Dr. Ferguson not to respond to any questions regarding communications with the third-party, Lilly ICOS LLC ("Lilly ICOS"), on the grounds of the attorney-client and joint-interest privileges. Counsel for ICOS did not represent Lilly ICOS during those communications and there is no joint defense agreement between Lilly ICOS and ICOS.

[REDACTED]

7. On November 10, 2006, the undersigned sent an email to counsel for ICOS requesting that ICOS withdraw the objection to Dr. Ferguson's testimony about his communications with third-parties related to Vanderbilt's claims in this litigation because those communications are not protected by any privilege doctrine. Counsel for ICOS responded by denying the request. A copy of that email exchange is attached hereto as Exhibit "C."

8. Delaware has long recognized that the attorney/client privilege "protects the communications between a client and an attorney acting in his professional capacity where the communications are intended to be confidential, and the confidentiality is not waived." *Moyer v. Moyer*, 602 A.2d 68, 72 (Del. 1992) citing *Riggs Nat. Bank of Washington, D.C. v. Zimmer*, 355 A.2d 709, 713 (Del. Ch. 1976). Delaware courts have stated, "the privilege extends to a (1) communication, (2) which is confidential, (3) which was for the purpose of facilitating the rendition of professional legal services to the client, (4) between the client and his attorney." *Ramada Inns, Inc v. Dow Jones & Co., Inc.*, 523 A.2d 968, 970 (Del. Super. Ct. 1986). The

burden of proving that the privilege applies to a particular communication is on the party asserting the privilege. *Moyer*, 602 A.2d at 72.

9. The privilege only protects the communications themselves and does not prevent disclosure of the underlying facts which are the substance of the communications:

> A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question, "What did you say or write to the attorney?" but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney.

*Upjohn Co. v. United States*, 449 U.S. 383, 395-96, 101 S.Ct. 677, 685, 66 L.Ed.2d 584 (1981), quoting *Philadelphia v. Westinghouse Elec. Corp.*, 205 F.Supp. 830, 831 (E.D.Pa.1962). Thus a party may always be compelled to disclose relevant information even when the information was received through a communication, which is itself privileged.

10. In contrast to the modern attorney-client privilege, the work-product privilege is one belonging to the attorney rather than the client. *Riggs Nat'l Bank*, 355 A.2d at 714 (citing *Duplan Corp. v. Moulinage et Retorderie de Chavanoz*, 487 F.2d 480 (4th Cir. 1973)). The work-product privilege is closely tied to the attorney-client privilege, in that there is a public policy interest in protecting an attorney's privacy and enabling an attorney to work without interference in preparing a client's case. *Riggs Nat'l Bank*, 355 A.2d at 714-15.

11. Generally, voluntary disclosure by the client or consent to disclosure of any significant part of the privileged matter operates as a waiver of the privilege. But there is no waiver when the disclosing party and its recipient share some common legal interest, such as where they are co-defendants or are involved in or anticipate joint litigation. *See Union Carbide Corp. v. Dow Chemical Co.*, 619 F.Supp. 1036, 1047 (D.C.Del.1985) *citing SCM Corp. v. Xerox Corp.*, 70 F.R.D. 508, 513 (D.Conn.1976). However, the legal interest between the disclosing

party and the recipient must be identical. As this Court has previously stated, "[t]he key consideration is that the nature of the legal interest be **identical, not similar, and be legal, not solely commercial**." *Id* citing *Duplan Corp v Deering Milliken, Inc.*, 397 F.Supp. 1146 (D.S.C.1974) (emphasis added).

12. In Delaware, the common interest privilege only applies where the communications involve the discussion of defenses to an action or the formulation of the defense strategy. In *Corning Inc v. SRU Biosystems, LLC*, this Court held that the common interest doctrine was not applicable where disclosures were not made in an effort to formulate joint defense, but rather to persuade a third-party to invest in defendant. 223 F.R.C. 189, 190 (D.Del. 2004); *see also Walsh v. Northrop Grumman Corp.*, 165 F.R.D. 16, 18 (E.D.N.Y. 1996) (holding that the common interest privilege "does not extend to communications about a joint business strategy that happens to include a concern about litigation").

13. Deposition testimony may be compelled so long as the information sought is reasonably calculated to lead to the discovery of admissible evidence. *See Tolson v Foraker*, 192 A.2d 919 (Del. Super. Ct. 1963). It is not an adequate objection that the questions posed during the deposition may not themselves produce admissible evidence. *Id*. In Delaware, the permissible scope of discovery is construed broadly, and the relevancy threshold is satisfied as long as the discovery sought relates to "any matter, not privileged, which is relevant to the subject matter involved in the pending action." *Empire Box Corp v. Illinois Cereal Mills*, 90 A.2d 672, 674 (Del. Super. Ct. 1952).

14. ICOS's counsel did not have the right to instruct Mr. Ferguson not to answer questions regarding the aforementioned meeting with Glaxo. Counsel may only instruct a deponent not to answer a question "when necessary to preserve a privilege, to enforce a

limitation directed by the court, or to present a motion under Rule 30(d)(4)." Fed. R. Civ. P. 30(d)(1).

15.     The above-referenced communications between ICOS, Glaxo, and Dr. Ross are directly relevant to the claims in Vanderbilt's Complaint. ICOS's attorneys did not represent Mr. Ross or Glaxo at the June 2006 meeting with Glaxo. The Glaxo attorneys at the meeting also did not represent Dr. Ross, who was a <u>former</u> employee of Glaxo at the time of the June 2006 communications discussed above. As a result, the communications that took place during the meeting are not privileged because neither Dr. Ross nor Glaxo had an attorney-client relationship with anyone at the meeting. In addition, the communications are not privileged by virtue of any joint-defense agreement, because there is no joint-defense agreement between ICOS, Dr. Ross, and Glaxo with respect to this litigation. Those communications are also not protected under the work-product doctrine because those communications were disclosed to third-parties, Glaxo and Dr. Ross, who did not have a confidential relationship with the attorney. Further, the communications are not covered by any "common-interest privilege" because: (a) Glaxo and Dr. Ross are not and can not be parties to this litigation; and (b) Glaxo, Dr. Ross, and ICOS do not have identical legal interests with respect to the claims raised in Vanderbilt's Complaint. As discussed above, Vanderbilt is not seeking any monetary damages in this case. Vanderbilt is simply requesting that the Court correct the Patents-at-Issue by adding the Vanderbilt scientists as co-inventors to the patent. As a result, Glaxo and Dr. Ross have no legal interest in this litigation, much less, an identical legal interest to ICOS. Here, ICOS's counsel instructed Dr. Ferguson not to answer undersigned counsel's questions, and thus obstructed Vanderbilt's efforts to take the depositions.

16.    Similarly, the above referenced communications between Dr. Ferguson and Lilly ICOS are directly relevant to the claims in Vanderbilt's Complaint. ICOS did not represent the Lilly ICOS board during the aforementioned meeting. As a result, the communications that took place during that meeting are not privileged because those communications were not between the client and his attorney and involved a third-party without a confidential relationship with the attorney. In addition, the communications are not privileged by virtue of any joint-defense agreement, because there is no joint-defense agreement between Lilly ICOS and ICOS with respect to this litigation. Those communications are also not protected under the work-product doctrine because they were disclosed to a third-party, Lilly ICOS, who did not have a confidential relationship with the attorney. Further, the communications are not covered by any "common-interest privilege" because: (a) Lilly ICOS is not and can not be a party to this litigation; and (b) Lilly ICOS and ICOS do not have identical legal interests with respect to the claims raised in Vanderbilt's Complaint. The correction of the Patents-at-Issue has no "legal" impact on Lilly ICOS. As discussed above, Vanderbilt is not seeking any monetary damages in this case. Vanderbilt is simply requesting that the Court correct the Patents-at-Issue by adding the Vanderbilt scientists as co-inventors to the patent. Similar to *Corning Inc*, the common interest doctrine is not applicable here because the disclosures were not made in effort to formulate joint defense, but rather to persuade a third-party to invest in Defendant. 223 F.R.C. at 190. If there is any interest by Lilly ICOS in this litigation, it is purely financial and surely not an identical legal interest to ICOS. Here, ICOS's counsel instructed Dr. Ferguson not to answer undersigned counsel's questions, and thus obstructed Vanderbilt's efforts to take the depositions.

## RULE 7.1.1 CERTIFICATION

Undersigned counsel hereby certifies that Rule 7.1.1 of the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware have been complied with

WHEREFORE Plaintiff, Vanderbilt University moves the Court for entry of an Order compelling Kenneth M. Ferguson, PhD to testify on the subject of any communications by him or ICOS with Glaxo, Dr. Ross and/or Lilly ICOS LLC relating to this litigation.

Dated: November 27, 2006

BIFFERATO, GENTILOTTI,
BIDEN & BALICK, L.L.C.

Vincent A. Bifferato, Jr. (#2465)
Ian Connor Bifferato (#3273)
Joseph K. Koury (#4272)
1308 Delaware Avenue
Wilmington, Delaware 19806
(302) 429-1900

-and-

Robert S. Brennen
Donald E. English, Jr.
MILES & STOCKBRIDGE P.C.
10 Light Street
Baltimore, Maryland 21202
(410) 727-6464

*Attorneys for Plaintiff,
Vanderbilt University*