IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| VANDERBILT UNIVERSITY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: 05-506-SLR |
| | ) | |
| v. | ) | REDACTED VERSION DI 73 |
| | ) | |
| ICOS CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**THIRD PARTY MARK RACHLIN, ESQ. AND GLAXOSMITHKLINE'S (HEREAFTER "GSK") OPPOSITION TO PLAINTIFF'S MOTION FOR ORDER COMPELLING COMPLIANCE WITH SUBPOENA AND FOR THE IMPOSITION OF CONTEMPT SANCTIONS**

The instant Motion to compel and for sanctions was brought by Plaintiff Vanderbilt University ("Vanderbilt") against non-party Mark Rachlin, Esq., senior in-house counsel for GSK. The Motion seeks an order compelling the production of Mr. Rachlin for deposition, the production of documents, and sanctions for Mr. Rachlin's failure to appear at a deposition. Vanderbilt's Motion for Sanctions should be denied.[1]

The underlying action was brought by Vanderbilt against ICOS Corporation ("ICOS"). Vanderbilt is seeking to correct alleged deficiencies in the inventorship of two U.S. patents. The patents, US Patent Nos. 5,859,006 and 6,140,329, are listed in the Orange Book as covering the compound tadalafil. Tadalafil is currently marketed as the prescription erectile dysfunction drug, Cialis®. The patents in suit were assigned by GSK to ICOS. As part of the assignment, ICOS is required to, *inter alia*, **REDACTED**

---

[1] GSK has offered to produce Mr. Rachlin and responsive non-privileged documents, if any, at a mutually convenient place and time.

REDACTED

(Rachlin Decl. ¶ 3).

## The Rachlin Subpoena

Vanderbilt admits that the Rachlin subpoena was not served until October 30, 2006, and that it demanded both document production and the attendance of Mr. Rachlin for deposition by November 8, 2006 --- a mere seven business days following service of the subpoena upon non-party GSK. (Vanderbilt Motion p. 2, ¶ 2). The documents demanded by Vanderbilt's subpoena were:

1. Copies of any and all documents relating to communications between you and ICOS Corporation as relates to the above-captioned litigation.

2. Copies of any and all documents relating to communications between you and Lilly ICOS LLC as relates to the above-captioned litigation.

3. Copies of any and all documents relating to communications between you and Kevin M. Flowers, Esq. as relates to the above-captioned litigation.

4. Copies of any and all documents relating to communications between you and Marshall, Gerstein & Borun LLP as relates to the above-captioned litigation.

(See Vanderbilt Motion Exhibit A).

The time provided for Mr. Rachlin to respond to Vanderbilt's subpoena is facially unreasonable. It demands both the production of documents and the deposition of a non-party within seven business days of its issuance thus necessitating the denial of Vanderbilt's Motion on this basis alone. (*See*, e.g., Fed. R. Civ. P. 34 providing that a party to litigation has 30 days to respond to a document request); *Paul v. Stewart Enterprises, Inc.*, 2000 WL 1171120 (E.D. La. 2000) (one business day's notice is clearly unreasonable in light of the requirement in Rule 45(c)(2)(B) that a subpoenaed person be permitted 14 days to object); *United States v. Woods*,

931 F. Supp. 433, 442 n. 3 (E.D. Va. 1996) (obtaining subpoenas 7 days before the hearing was not a reasonable enough time to comply).

More egregious, however, is Vanderbilt's disregard of and failure to comply with D.Del. LR 7.1.1.[2]  Promptly after receipt of the subpoena, counsel for Mr. Rachlin and GSK advised Vanderbilt's counsel of Connolly Bove's representation of Mr. Rachlin and GSK and set forth, pursuant to Fed.R.Civ.P. 45, objections to the subpoena (*see* Vanderbilt Motion Exhibit B). These objections included, *inter alia*:

- Objections based on privilege, including the common interest privilege (*see* ¶ 1, Vanderbilt Exhibit B);

- Relevancy (*see* Vanderbilt Exhibit B, ¶ 2); and,

- Timeliness (*see* Vanderbilt Exhibit B, ¶ 5).

On November 3, 2006, counsel for Vanderbilt responded complaining about GSK's objections and demanded a response that day, otherwise Vanderbilt threatened to file a motion to compel and separate motion for an order of contempt. (*See* Vanderbilt Motion Exhibit C).

Despite the unreasonableness of Vanderbilt's counsel demand, counsel for GSK contacted Vanderbilt's counsel, Mr. Brennan, from the San Francisco Airport seeking to understand what discovery Vanderbilt desired to obtain from Mr. Rachlin and GSK. (Bourke Decl. ¶ 6).  Contrary to Vanderbilt's assertion that GSK failed to advise Vanderbilt that Mr. Rachlin would not appear for the deposition as noticed (*see* Vanderbilt Motion p. 3, ¶ 6),  GSK's counsel informed Mr. Brennan that a November 8 deposition would not be possible given the short notice and GSK's need to collect, process and review the documents demanded for privilege coupled with the need to prepare a privilege log. (Bourke Decl. ¶ 6).  GSK also informed Mr. Brennan that such deposition seemed futile because the information sought was

---

[2] We note that Vanderbilt's Motion failed to proffer the required certification pursuant to D.Del.LR 7.1.1.

privileged under the common interest doctrine. (Bourke Decl. ¶ 6). *See, e.g., In re Regents of the University of California*, 101 F.3d 1386, 1389-1390 (Fed. Cir. 1996) (recognizing common interest privilege in the enforcement of patents between licensor and licensee).

Prior to the issuance of Vanderbilt's subpoena to Mr. Rachlin, GSK had produced over 15,000 pages of documents to ICOS which ICOS in turn produced to Vanderbilt. (Bourke Decl. ¶ 7, Rachlin Decl. ¶ 7, Flowers Decl. ¶ 9). And, just two weeks before service of the Rachlin subpoena, Vanderbilt had sought the depositions of two Glaxo scientists, Dr. Daugan and Dr. Grondin, in France and Dr. Barry Ross (a former Glaxo employee) in the U.K. (Bourke Decl. ¶ 7). In an effort to cooperate and provide Vanderbilt with the discovery from GSK it apparently sought, counsel for GSK, during the November 3, 2006 telephone conversation, offered the following to Mr. Brennan:

- a stipulation to authenticate the Glaxo documents that had been produced by ICOS in this litigation;

- efforts to get Dr. Ross (ex-Glaxo) whom counsel for GSK understood to be the subject of a motion for letters rogatory, to voluntarily sit for a deposition in the U.K. at a mutually agreeable time;

- efforts to make Drs. Grondin and Daugan, the Glaxo scientists, available for deposition in France at a mutually agreeable time.

(Bourke Decl. ¶ 7).

The conversation was friendly and cordial. Counsel for GSK and Vanderbilt agreed to continue their discussions in order to hopefully reach an amicable resolution and avoid the deposition of a non-party in-house counsel which would likely result in nothing more than

504060

instructions not to answer based on the privileged nature of the communications. (Bourke Decl. ¶ 7).

The next morning, Saturday, GSK's counsel received an e-mail from Mr. Brennan requesting the availability of Glaxo's third-party witnesses the following week, the week of November 13. (Bourke Decl. ¶ 8, Exhibit 2). GSK's counsel responded the same day noting that Vanderbilt was requesting a very tight schedule. Recognizing the fact that the parties to the litigation had a fact discovery cut-off date of November 17th, GSK nonetheless indicated that it would be willing to provide the proffered discovery beyond that date if acceptable to the parties to the litigation, Vanderbilt and ICOS. (*Id.*)

On Monday, November 6th, there were further e-mail communications between counsel regarding GSK's proposed resolution of this matter. These communications clearly reflect an ongoing good faith effort to meet and confer to provide Vanderbilt with the discovery it desired, even though Mr. Brennan seemed interested in creating a dispute. (Bourke Decl. ¶ 10).

Much to GSK's surprise and dismay, Mr. Brennan sent an e-mail on Tuesday, November 7 at 6:48 A.M. implying that GSK's offers were not genuine, stating that GSK had no basis to make the offers, and insisting that:

> "ICOS lawyers have advised that they will not consent to an extension of the fact discovery deadline for the purpose of conducting the Ross, Grondin or Daugan depositions. Therefore, if Glaxo can confirm in writing that they will be available, we will issue notices today to take the Grondin and Daugan depositions in France next week"

(Vanderbilt Motion Exhibit D).

Vanderbilt further threatened to go forward with the Rachlin deposition unless GSK capitulated to all its demands. At no time did GSK's counsel understand that Vanderbilt would

attempt to proceed with Mr. Rachlin's deposition the next day given the parties prior conversation on November 3rd and Mr. Brennan's representation in his November 3rd letter that:

> "I look forward to hearing from you and remain confident that we can work out a way to proceed to accomplish Vanderbilt University's legitimate discovery goals with minimal inconvenience to Mr. Rachlin and with adequate protection of any legitimate interests of his employer or employers."

(Vanderbilt Motion Exhibit C).

GSK's counsel responded to Mr. Brennan's November 7 sunrise email within 20 minutes indicating that she would "call to discuss." While GSK's counsel was unable to get back to Mr. Brennan that day because of other business commitments, GSK's counsel nonetheless understood that Mr. Brennan was in depositions with ICOS' lawyers and that the parties to the litigation would be further discussing the issue. (Bourke Decl. ¶ 13) (Flowers Decl. ¶¶ 3, 8)

In any event, it is inconceivable how Vanderbilt's counsel could reasonably believe that Mr. Rachlin's deposition would proceed with a mere 26 hours notice, particularly given GSK counsel's prior objection to the timing, representations that any responsive documents had to be processed and the coordination of both the witness' and GSK's counsel's schedule. Furthermore, going forward with Mr. Rachlin's deposition prior to the production of documents and privilege log would have been inefficient and wasteful of the parties' resources. Counsel for Vanderbilt's election to travel from Baltimore to Wilmington for a deposition it knew or should have known would not go forward was not rational. GSK should not now be required to pay for Vanderbilt's purported prejudice which is of its own making.

At all times, counsel for GSK understood that the parties were still in a "meet and confer" mode and conveyed this information to ICOS' counsel. (Bourke Decl. ¶ 12; Flowers Decl. ¶ 6). In fact, Mr. Flowers, trial counsel for ICOS, discussed the status of Vanderbilt's negotiations with GSK on November 8 with Mr. Brennan during the deposition of Dr. Corbin. At that time

Mr. Flowers reiterated GSK's offer to Mr. Brennan regarding the Rachlin deposition and the Glaxo witnesses. (Flowers Decl. ¶ 7). During the conversation with Mr. Flowers on November 8, Mr. Brennan never indicated that Vanderbilt had rejected GSK's offer, rather Mr. Brennan indicated that he would have to discuss the offer with his client. (*Id.*) It wasn't until later on November 8 that Mr. Brennan sent Mr. Flowers an email summarily rejecting GSK's offer. (*Id.*)

GSK's counsel attempted to call Mr. Brennan on November 10th but was advised that he was still in depositions. Subsequently, GSK's counsel sent an e-mail which proposed the following:

1. We can make Dr. Ross available for deposition in the U.K. on January 5th. This will eliminate the need for Vandy to proceed through the letters rogatory process.

2. We can also make Dr. Grondin and Daugan available for deposition in France on the 11th and 12th of January. We understand that these dates are after the fact discovery cutoff and we are not suggesting an extension of that date but simply as a third party trying to accommodate your needs and avoid bothering the Court with a dispute that should be easily resolved between the parties.

3. We will work with you to provide a stipulation regarding the authenticity of the documents of the Glaxo documents produced in this case.

(Bourke Decl. ¶ 14).

Vanderbilt responded to GSK's efforts with the instant Motion. On November 21st, GSK's counsel again wrote counsel for Vanderbilt repeating its prior offer and alternatively offering Mr. Rachlin for deposition at a mutually agreeable time in an effort to avoid burdening this Court with an ancillary discovery dispute involving third party GSK. (Bourke Decl. ¶ 16). GSK's offers have fallen upon deaf ears. Rather than attempting to resolve the parties' differences in good faith without Court intervention, Vanderbilt has chosen the path described above. Where, as here, a third party deponent has made substantial good faith efforts to resolve

issues with opposing counsel, sanctions are clearly not appropriate. *See, e.g., Cochran Consulting, Inc. v. Unatec USA, Inc.*, 102 F.3d 1224, 1226-27 (Fed. Cir. 1996) (To avoid sanctions the party that is unable to comply with a valid discovery request must have acted in good faith). GSK has at all times proceeded in good faith and has repeatedly offered to make Mr. Rachlin available for deposition and produce responsive non-privileged documents at a mutually convenient time and place. The Court should refrain from condoning the "scorched earth" litigation tactics which Vanderbilt's counsel has chosen to wield against non-party GSK and deny Vanderbilt's request for an order sanctioning GSK. *See OpryLand USA, Inc. v. Great American Music Show, Inc.*, 970 F.2d 847, 854 (Fed. Cir. 1992) (The filing of an unwarranted motion for sanctions is not responsible advocacy. It simply produces satellite litigation replacing fair debate on legal theory and factual premise with tactical distraction, increasing the cost to the parties, and placing an unnecessary burden on the court. . . .).

GSK remains amenable to proceed with its prior good faith offer. Alternatively, although GSK continues to believe Vanderbilt's subpoena directed to Mr. Rachlin to be inappropriate and harassing, GSK will make Mr. Rachlin available for a deposition at a mutually agreeable time and place. However, GSK maintains its assertion of privilege based on the attorney-client privilege and attorney work product immunity and that privilege or immunity is maintained because ICOS and Glaxo share an identical legal interest vis-a-vis the patents in suit. (Rachlin Decl. ¶ 3, Flowers Decl. ¶ 8).

504060

- 9 -

CONNOLLY BOVE LODGE & HUTZ LLP


/s/ *James D. Heisman*
Mary W. Bourke (No. 2356)
James D. Heisman (No. 2746)
1007 N. Orange Street
P. O. Box 2207
Wilmington, DE 19899
(302) 658-9141
*Attorneys for Third Party Mark Rachlin, Esq. and GlaxoSmithKline*

Redacted Version: December 7, 2006
Dated:  November 28, 2006

## CERTIFICATE OF SERVICE

I, James D. Heisman, hereby certify that on this 7th day of December, 2006, I caused a true and correct copy of the foregoing **Third Party Mark Rachlin, Esq. and GlaxoSmithKline's (hereafter ("GSK") Opposition to Plaintiff's Motion for Order Compelling Compliance with Subpoena and for the Imposition of Contempt Sanctions** to be delivered to the following individuals in the manner indicated below:

*Via Federal Express*
Robert S. Brennan, Esq.
Miles & Stockbridge, P.C.
10 Light Street
Baltimore, MD 21202-1487

*Via Hand Delivery*
Joseph K. Koury, Esq.
Bifferato Gentilotti Biden & Balick, P.A.
1308 Delaware Avenue
Wilmington, DE 19806

*Via Federal Express*
Kevin M. Flowers, Esq.
Marshall, Gerstein & Borun L.L.P.
6300 Sears Tower
233 S. Wacker Drive
Chicago, IL 60606-6357

                                            /s/ James D. Heisman
                                          James D. Heisman (# 2746)

504060