IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| VANDERBILT UNIVERSITY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 05-506-SLR |
| | ) | |
| ICOS CORPORATION, | ) | REDACTED VERSION DI 75 |
| | ) | |
| Defendant. | ) | |
| | ) | |

### DECLARATION OF MARY W. BOURKE

I, Mary W. Bourke, declare as follows:

1. I am a partner at Connolly Bove Lodge & Hutz LLP in Wilmington, Delaware. I submit this declaration in opposition to Vanderbilt University's ("Vanderbilt") Motion for order compelling compliance with subpoena and for imposition of contempt sanctions (hereinafter "Motion") in the above captioned matter.

2. On Monday, October 30, 2006, I was contacted by Mr. Mark Rachlin, Esquire and asked to represent him and GlaxoSmithKline (hereinafter "GSK") in connection with a subpoena issued by counsel for Vanderbilt in connection with the above-captioned matter. The subpoena was served on Mr. Rachlin and GSK on the same date. (Vanderbilt Motion Exhibit "A")

3. The subpoena demanded Mr. Rachlin to sit for a deposition on November 8, 2006 – 9 days later – and produce for inspection and copying the following documents:

> 1. Copies of any and all documents relating to communications between you and ICOS Corporation as relates to the above-captioned litigation.

2. Copies of any and all documents relating to communications between you and Lilly ICOS LLC as relates to the above-captioned litigation.

3. Copies of any and all documents relating to communications between you and Kevin M. Flowers, Esq. as relates to the above-captioned litigation.

4. Copies of any and all documents relating to communications between you and Marshall, Gerstein & Borun LLP as relates to the above-captioned litigation.

4. On November 2, 2006, I wrote counsel for Vanderbilt informing him of my firm's representation of Mr. Rachlin and GSK and setting forth pursuant to Fed.R.Civ.P. 45 objections to the subpoena. (Vanderbilt Motion Exhibit "B"). These objections included, *inter alia*:

- Objections based on privilege, including the attorney-client privilege, attorney work-product immunity and the common interest doctrine (*see* ¶ 1)
- Relevancy (*see* ¶ 2)
- Timeliness (*see* ¶ 5.)

5. On November 3, 2006, counsel for Vanderbilt responded complaining about the objections and demanding a response that day, otherwise threatening to file a motion to compel and separate motion for an order of contempt. (Vanderbilt Motion Exhibit "C").

6. Despite the unreasonableness of Vanderbilt's counsel demand, I called Mr. Brennan from the San Francisco Airport where I had been that week in depositions seeking to understand what discovery Vanderbilt desired to obtain from my client, Mr. Rachlin and GSK. I informed Mr. Brennan that a November 8 deposition would not be possible given the short notice and the need to collect and review the documents requested for privilege

504065                                    2

and prepare a privilege log. I also informed Mr. Brennan that such deposition seemed futile given that the information sought was privileged and protected from discovery under the common interest doctrine.

7.  Prior to my involvement in the litigation, GSK had produced over 15,000 pages of documents to ICOS Corporation ("ICOS") which ICOS in turn produced to Vanderbilt. In addition, just two weeks before service of the subpoena Vanderbilt had sought the depositions of two Glaxo scientists, Dr. Daugan and Dr. Grondin, in France and Dr. Barry Ross (a former Glaxo employee) in the U.K. (*see* attached Exhibit 1). In an effort to cooperate and be reasonable and avoid the unnecessary time and expense of a deposition of an in-house Glaxo attorney, in our telephone conversation of November 3, 2006 I offered the following to Mr. Brennan:

- a stipulation to authenticate the Glaxo documents that had been produced by ICOS in this litigation;
- efforts to get Dr. Ross (ex-Glaxo) whom I understood to be the subject of a motion for letters rogatory, to voluntarily sit for a deposition in the U.K. at a mutually agreeable time;
- efforts to make Drs. Grondin and Daugan, the Glaxo scientists, available for deposition in France at a mutually agreeable time.

The conversation was friendly and cordial. We agreed to continue the discussions in order to hopefully reach an amicable resolution.

8.  The next morning, Saturday, I received an e-mail from Mr. Brennan requesting the availability of Glaxo's third-party witnesses the following week, the week of November 13. (*see* attached Exhibit 2).

504065                                      3

9. I responded the same day indicating that it was a very tight schedule, recognizing the fact that the parties to the litigation had a fact discovery cut-off date of November 17th, but that my client would be willing to provide the proffered discovery beyond that date if acceptable to Vanderbilt and ICOS. (*see* attached Exhibit 2).

10. On Monday, November 6th, there were further e-mail communications regarding the proposed offer. These communications clearly reflect an effort to continue to meet and confer to provide Vanderbilt with the discovery it desired, even though Mr. Brennan seemed to be desirous of creating a dispute. (*see* attached Exhibit 3).

11. Surprisingly, I received an e-mail at 6:48 A.M. the next morning implying that all my offers were not genuine, stating I had no basis to make the offers I did, insisting that:

> "ICOS lawyers have advised that they will not consent to an extension of the fact discovery deadline for the purpose of conducting the Ross, Grondin or Daugan depositions. Therefore, if Glaxo can confirm in writing that they will be available, we will issue notices today to take the Grondin and Daugan depositions in France next week"

and threatening to proceed with Mr. Rachlin's deposition. (Vanderbilt Motion Exhibit "D").

12. Obviously, there was some disconnect as I believed we were still in a "meet and confer" mode and I responded within 20 minutes at 7:08 A.M. that I would "call to discuss." (Vanderbilt Motion Exhibit "D"). At no time did I understand that he would attempt to proceed with Mr. Rachlin's deposition the next day given our prior conversation on November 3rd and his representation in his November 3rd letter that

> "I look forward to hearing from you and remain confident that we can work out a way to proceed to accomplish Vanderbilt University's legitimate discovery goals with minimal inconvenience to Mr. Rachlin and with

adequate protection of any legitimate interests of his employer or employers."

(Vanderbilt Motion Exhibit "C").

13. I was unable to get back to Mr. Brennan that day as I was traveling on business with another client. However, I understood that he was in depositions with ICOS' lawyers and that the parties to the litigation would be discussing the issue.

14. I did attempt to call Mr. Brennan on November 10th and was told he was still in depositions. So I sent an e-mail which offered the following:

> 1. We can make Dr. Ross available for deposition in the U.K. on January 5th. This will eliminate the need for Vandy to proceed through the letters rogatory process.
>
> 2. We can also make Dr. Grondin and Daugan available for deposition in France on the 11th and 12th of January. We understand that these dates are after the fact discovery cutoff and we are not suggesting an extension of that date but simply as a third party trying to accommodate your needs and avoid bothering the Court with a dispute that should be easily resolved between the parties.
>
> 3. We will work with you to provide a stipulation regarding the authenticity of the documents of the Glaxo documents produced in this case.

(*see* attached Exhibit 4)

15. Vanderbilt responded to GSK's reasonable offer with the instant Motion, on Monday November 13th.

16. On November 21st, I again wrote counsel for Vanderbilt repeating the offer and alternatively offering Mr. Rachlin for deposition at a mutually agreeable time in an effort to avoid burdening this Court with an ancillary discovery dispute involving a third party. (*see* attached Exhibit 5).

504065

5

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and understanding. Executed on November 28, 2006 in Wilmington, Delaware.

/s/ Mary W. Bourke
Mary W. Bourke, Esquire
**Connolly Bove Lodge & Hutz LLP**
The Nemours Building
1007 N. Orange Street
Wilmington, DE  19899-2207
(302) 888-6305

*Attorneys for Mark Rachlin, Esquire and GlaxoSmithKline*

Redacted Version:
December 7, 2006

## CERTIFICATE OF SERVICE

I, James D. Heisman, hereby certify that on this 28th day of November, 2006, I caused a true and correct copy of the foregoing **Declaration of Mary W. Bourke** to be delivered to the following individuals in the manner indicated below:

*Via Federal Express*
Robert S. Brennan, Esq.
Miles & Stockbridge, P.C.
10 Light Street
Baltimore, MD 21202-1487

*Via Hand Delivery*
Joseph K. Koury, Esq.
Bifferato Gentilotti Biden & Balick, P.A.
1308 Delaware Avenue
Wilmington, DE 19806

*Via Federal Express*
Kevin M. Flowers, Esq.
Marshall, Gerstein & Borun L.L.P.
6300 Sears Tower
233 S. Wacker Drive
Chicago, IL 60606-6357

/s/ James D. Heisman
James D. Heisman (# 2746)

Redacted Version:
December 7, 2006