**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| VANDERBILT UNIVERSITY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:05-cv-00506-SLR |
| vs. | ) | |
| | ) | |
| ICOS CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**ICOS CORPORATION'S OPPOSITION TO
PLAINTIFF'S MOTION TO "CORRECT" THE DOCKET**

**AND**

**OPENING BRIEF IN SUPPORT OF ICOS'S MOTION TO STRIKE VANDERBILT'S
JURY DEMAND**

Richard K. Herrmann #405
Mary B. Matterer #2696
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Tel: (302) 888-6800

Kevin M. Flowers
Thomas I. Ross
Elliot C. Mendelson
Rashmi V. Gupta
MARSHALL, GERSTEIN & BORUN LLP
6300 Sears Tower
233 South Wacker Drive
Chicago, IL 60606-6357
Tel: (312) 474-6300

October 26, 2007

Attorneys for ICOS Corporation

## TABLE OF CONTENTS

I.    Introduction.................................................................................................... 4

II.   Nature and Stage of the Proceedings ............................................................. 4

III.  Counterstatement of Facts............................................................................... 6

IV.   The Legal Standards for Right to a Jury Trial ................................................ 7

   A.   The Standard for Striking a Jury Demand .......................................... 7

   B.   The Standard for Right to a Jury Trial ............................................... 7

   C.   The Supreme Court Test: Law vs. Equity......................................... 8

   D.   History of 35 U.S.C. § 256 Actions .................................................. 8

   E.   18th Century English Practice ........................................................... 9

   F.   Nature of the Remedy Sought: No Damages.................................... 9

   G.   Balancing History and Remedy ....................................................... 10

   H.   The Federal Circuit has Confirmed that 35 U.S.C. § 256 Actions are not Tried to a Jury 11

   I.   District Courts' Characterization of 35 U.S.C. § 256 Actions.......................................... 11

V.    Conclusion ................................................................................................... 12

## TABLE OF AUTHORITIES

**CASES**

*Cantor v. Perelman*, No. 97-586,
  2006 WL 318666 (D. Del. Feb. 10, 2006) .............................................................................. 10

*Ethicon, Inc. v. United States Surgical Corp.*,
  921 F. Supp. 901 (D. Conn. 1995)........................................................................................ 12

*Gardco Mfg., Inc. v. Herst Lighting Co.*,
  820 F.2d 1209 (Fed. Cir. 1987)............................................................................................ 12

*General Tire & Rubber Co. v. Watson-Bowman Associates, Inc.*,
  74 F.R.D. 139 (D. Del. 1977) ............................................................................................... 12

*Granfinanciera, S.A. v. Nordberg*,
  492 U.S. 33 (1989)............................................................................................... 7, 8, 9, 10

*Great-West Life & Annuity Ins. Co. v. Knudsen*,
  534 U.S. 204 (2002)............................................................................................................. 10

*Kao Corp. v. Unilever United States, Inc.*,
  No. Civ.A. 01-680, 2003 WL 1905635 (D. Del. April 17, 2003) (J. Robinson) ..................... 8

*K-Tek Corp. v. Lovett*,
  924 F. Supp. 57 (M.D. La. 1996)......................................................................................... 12

*Marketel Intern., Inc. v. Priceline.com*,
  138 F. Supp. 2d 1210 (N.D. Cal. 2001) ............................................................................... 12

*MCV, Inc. v. King-Seeley Thermos Co.*,
  870 F.2d 1568 (Fed. Cir. 1989).......................................................................................... 8, 9

*Mowry v. Whitney*,
  81 U.S. 434 (1871)................................................................................................................. 9

*Newfound Management Corp. v. Lewis*,
  131 F.3d 108 (3d Cir. 1997).................................................................................................. 7

*Pereira v. Farace*,
  413 F.3d 330 (2nd Cir. 2005)............................................................................................... 10

*Shum v. Intel Corp. et al.*,
  No. 2006-1249, 2007 U.S. App. LEXIS 20184 (Fed. Cir. Aug. 24, 2007) ........................ 4, 11

*Tull v. United States*,
  481 U.S. 412 (1987).............................................................................................................. 8, 9

*U.S. Indus., Inc. v. Norton Co.*,
  184 U.S.P.Q. 187 (N.D.N.Y. 1974) ...................................................................................... 12

*Ultra-Precision Mfg. v. Ford Motor Co.*,
  411 F.3d 1369 (Fed. Cir. 2005)............................................................................................ 11

*United States v. Stone*,
  69 U.S. 525 (1864)................................................................................................................. 9

*Whiteside Biomechanics, Inc. v. Samofar Danek Group,*
    88 F. Supp. 2d 1009 (E.D. Mo. 2000)....................................................................... 12

*Yeda v. Imclone,*
    443 F. Supp. 2d 570 (S.D.N.Y. 2006)....................................................................... 12

## STATUTES

35 U.S.C. § 256........................................................................................................................ 8

U.S. Const. Amend. VII........................................................................................................... 7

## OTHER AUTHORITIES

2 William C. Robinson, *The Law of Patents for Useful Inventions* Section 726 (1890) ................ 9

## RULES

Fed. R. Civ. P. 38(a) ............................................................................................................... 7

Fed. R. Civ. P. 38(b) ............................................................................................................... 7

Fed. R. Civ. P. 39(a) .......................................................................................................... 4, 7

L.R. 47.1(a) .............................................................................................................................. 6

L.R. 51.1(a) .............................................................................................................................. 6

L.R. 51.1(c) .............................................................................................................................. 6

## I.    INTRODUCTION

This Court should deny Vanderbilt's motion to "correct" the docket scheduling this case for a bench trial, and should strike Vanderbilt's jury demand. The only relief Vanderbilt seeks in this case is a change in inventorship on the patents-at-issue under 35 U.S.C. § 256. Under the Supreme Court's *Granfinanceria* test, such an equitable claim does not give rise to a right to a jury trial, as confirmed by the Federal Circuit as recently as two months ago. *Shum v. Intel Corp. et al.*, No. 2006-1249, 2007 U.S. App. LEXIS 20184, at *16-17 (Fed. Cir. Aug. 24, 2007) ("[A plaintiff] would not be entitled to a jury trial on [a] § 256 inventorship claim standing alone . . . ."). In its motion to "correct" the docket, Vanderbilt does not point this Court to *any* case law supporting its claim for a trial by jury for a § 256 action to change inventorship. That is because there is no such case law.

Pursuant to Fed. R. Civ. P. 39(a), this Court should deny Vanderbilt's motion to "correct" the docket, strike Vanderbilt's jury demand, and order that this case will be tried in a bench trial to this Court.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

1.  Vanderbilt brought this action under 35 U.S.C. § 256 to add three of its employees as inventors on U.S. Patent Nos. 5,859,006 ("the '006 patent") and 6,140,329 ("the '329 patent") (collectively, "the patents-at-issue"). *See* D.I. 1 (Complaint).

2. Vanderbilt named ICOS Corporation ("ICOS"), the assignee of the patents-at-issue, as the defendant in this action.[1]

3. The patents-at-issue describe and claim novel derivatives of a class of compounds known as β-carbolines and pharmaceutical compositions containing those derivatives. The patents-at-issue also describe and claim methods of making the novel β-carboline derivatives and methods of using such novel β-carboline derivates to treat, *inter alia*, cardiovascular diseases and male erectile dysfunction. The claimed compounds include the compound known as "tadalafil," which is the active ingredient in the drug sold in this country as Cialis® for treating male erectile dysfunction.

4. The patents-at-issue, which were filed in 1994 and 1995, list Dr. Alain Daugan, a medicinal chemist at Laboratoires Glaxo Wellcome S.A. in Les Ulis, France (a subsidiary of GlaxoSmithKline, hereinafter collectively "Glaxo") as the sole inventor.

5. Vanderbilt does not challenge Dr. Daugan's inventorship of the compounds and methods claimed in the patents-at-issue. Rather, Vanderbilt asserts that its three employees should also be listed as inventors on the patents.

6. Vanderbilt has admitted that its three employees (1) never worked or communicated with Dr. Daugan; (2) were completely unaware of the β-carboline derivatives invented by Dr. Daugan until they saw one of the patents-at-issue just a few years ago; (3) were unaware that anyone at Glaxo was developing β-carboline derivatives until they saw a publication by Dr. Daugan just a few years ago, and (4) had not been working with β-carboline compounds themselves. *See, e.g.*, D.I. 59 (Plaintiff Vanderbilt University's Response to ICOS Corporation's Second Set of Requests for Admission).

---

[1] ICOS is a small biopharmaceutical company in Bothell, Washington that began operations in 1990. In 1991, ICOS entered into a collaboration agreement with Glaxo to jointly develop drugs to treat several diseases including cardiovascular diseases like hypertension. In 1997, ICOS purchased Glaxo's compounds, related know-how, and intellectual property covering certain aspects of the subject matter of the collaboration, including all rights in the inventions claimed in the '006 and '329 patents. As part of that transaction, Glaxo assigned the '006 and '329 patents to ICOS. In 1998, ICOS agreed with Eli Lilly and Company to establish Lilly ICOS LLC, a joint venture to develop and globally commercialize Cialis® (tadalafil) as an oral therapeutic agent for the treatment of impotence and other potential indications. The FDA approved Cialis® for the treatment of impotence in 2003. On January 29, 2007, Eli Lilly acquired ICOS.

7. Fact discovery began in December 2005 and was originally scheduled to close on November 18, 2006. At the January 29, 2007 status conference, the Court granted Vanderbilt leave to submit additional discovery requests pertaining to a purported new issue relating to Glaxo databases. Consequently, fact discovery was extended through April 30, 2007.

8. Expert discovery closed on August 15, 2007.

9. The Pre-Trial Order is due December 13, 2007.

10. The Pre-Trial Conference is scheduled for December 18, 2007 at 3:00 pm.

11. This case is scheduled for a bench trial beginning January 3, 2008 at 9:30 am.

## III.    COUNTERSTATEMENT OF FACTS

12. Vanderbilt did not request a jury trial in the December 7, 2005 Scheduling Order (D.I. 22).

13. The language proposed by Vanderbilt for the April 4, 2007 Supplemental Scheduling Order (D.I. 107) did not include the following items that would be required for a jury trial: (1) a request for a jury trial; (2) a due date for jury *voir dire* questions (as required by L.R. 47.1(a)); (3) a due date for jury instructions (as required by L.R. 51.1(a)); or (4) a due date for a special verdict or interrogatories (as required by L.R. 51.1(c)).

14. Upon execution of the Supplemental Scheduling Order on April 4, 2007, the Court also entered the following in the docket: "Bench Trial set for 1/3/2008 09:30 AM in Courtroom 6B before Honorable Sue L. Robinson. Signed by Judge Sue L. Robinson on 4/4/07."

15. For more than five months after entry of the Supplemental Scheduling Order, Vanderbilt said nothing about this Court's order that this case would be a bench trial.

16. In its motion to "correct" the docket, Vanderbilt overlooks the fact that this Court frequently issues orders in the form of text-only entries to the docket.[2]

---

[2]    Section K(2) of the Delaware Administration Procedures for ECF Filings, relating to Orders and Judgments, states that "[a] judge or deputy clerk, if appropriate, may grant routine orders by a text-only entry upon the docket. In such instances, no PDF document will be issued; the text-only entry shall constitute the Court's only order on the matter and counsel will receive a system-generated NEF."

## IV.    THE LEGAL STANDARDS FOR RIGHT TO A JURY TRIAL

### A.    The Standard for Striking a Jury Demand

"The trial of all issues demanded shall be by jury, unless [, *inter alia*,] the court upon motion or of its own initiative finds that a right of trial by jury of some or all of those issues does not exist under the Constitution or statutes of the United States." Fed. R. Civ. P. 39(a).

### B.    The Standard for Right to a Jury Trial

Federal Rule of Civil Procedure 38(a) states that "the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States shall be preserved to the parties inviolate." Fed. R. Civ. P. 38(a).

"Any party may demand a trial by jury of any issue triable of right by a jury by serving a written demand upon the other parties and filing the demand as required by Rule 5(d)." Fed. R. Civ. P. 38(b). "Such demand may be indorsed upon a pleading of the party." *Id.*

The Seventh Amendment to the United States Constitution provides "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." U.S. Const. Amend. VII.

"The word 'preserved' demands a historical inquiry to determine whether the suit, if filed in the English courts before 1791, would have fallen within the jurisdiction of law or equity." *Newfound Management Corp. v. Lewis*, 131 F.3d 108, 114 (3d Cir. 1997) (citing *Parsons v. Bedford*, 28 U.S. (3 Pet.) 433, 446-47 (1830)).

The Supreme Court interprets "suits at common law" to mean cases involving legal rights; no jury right attaches to equitable claims. *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 41 (1989).

### C.    The Supreme Court Test:  Law vs. Equity

As this Court is well aware,[3] the United States Supreme Court laid out a three-prong test to determine whether a claim is equitable or legal in nature. *Granfinanciera*, 492 U.S. at 42. "First, courts must compare the statutory action to 18th century actions brought in the courts of England prior to the merger of the courts of law and equity." *Id.* at 42; *see also Tull v. United States*, 481 U.S. 412, 417 (1987). "Second, a court must examine the remedy sought and determine whether it is legal or equitable in nature." *Granfinanciera*, 492 U.S. at 42; *see also Tull*, 481 U.S. at 417-418. The second stage of this analysis is more important than the first. *Granfinanciera*, 492 U.S. at 42. If these two factors on balance indicate that a party is entitled to a jury trial under the Seventh Amendment, then the court proceeds to the third-prong of the test and determines whether Congress has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as fact finder. *Id.* at 42.

### D.    The nature of the statutory action: History of inventorship actions

In the Patent Act of 1952, Congress included a procedure for correcting issued patents for innocent inventorship errors. 35 U.S.C. § 256. The underlying issue in a § 256 action is a dispute regarding inventorship misjoinder or nonjoinder. *MCV, Inc. v. King-Seeley Thermos Co.*, 870 F.2d 1568, 1570 (Fed. Cir. 1989).

Prior to the Patent Act of 1952, no avenue existed for correction of misjoined or nonjoined inventors subsequent to a patent's issuance. *Id.* "Before the enactment of section 256, patentees and their assignees committed inventorship errors at their peril; misjoinder or nonjoinder of an inventor rendered the patent invalid." *Id.* Therefore, prior to 1952, an action brought to dispute inventorship of an issued patent was essentially an action that disputed the

---

[3]    *See Kao Corp. v. Unilever United States, Inc.*, No. Civ.A. 01-680, 2003 WL 1905635 (D. Del. April 17, 2003) (J. Robinson).

validity of the granted patent. If inventorship of the patent was found to be improper, the nature of the remedy was a declaration of invalidity. *Id.*

### E.    18th-century English practice regarding inventorship actions

In England, prior to 1791, anyone could challenge a patent's validity by a *scire facias* writ in equity. *Mowry v. Whitney*, 81 U.S. 434, 439-40 (1871); *see also United States v. Stone,* 69 U.S. 525, 535 (1864). The *scire facias* writ in equity to repeal a patent was brought in chancery where the patent was of record. *Mowry*, 81 U.S. at 440. The nature of the chancery jurisdiction and its mode of proceeding had established it as the appropriate tribunal for annulling a grant of patent from the government. *Id.* A writ of *scire facias* in equity could issue for any of the following reasons: 1) a previous patent had issued on the invention; 2) fraud (inequitable conduct); or 3) unlawful grant (invalid patent). *Id.* at 439; *Stone*, 69 U.S. at 535; *see also* 2 William C. Robinson, *The Law of Patents for Useful Inventions* Section 726 (1890).

Thus, a post-1952 Patent Act action under § 256 for misjoinder or nonjoinder of an inventor is analogous, historically, to an action for invalidity of the patent in the equity courts of 18th century England. A § 256 statutory action, therefore, is more similar to cases tried in the courts of equity in 18th century England than cases tried in the courts of law under the first prong of the analysis set forth by the Supreme Court. *Granfinanciera,* 492 U.S. at 42; *Tull*, 481 U.S. at 417-18.

### F.    Nature of the remedy sought:  Vanderbilt does not seek damages

Under the second prong of the Supreme Court's test, the court must examine the remedy sought and determine whether it is legal or equitable in nature. *Granfinanciera,* 492 U.S. at 42; *Tull*, 481 U.S. at 417-18. The second prong of this analysis is more important than the first. *Granfinanciera,* 492 U.S. at 42. Equitable relief is narrowly defined as remedies that "restore to the plaintiff particular funds or property *in the defendant's possession*" and not those remedies

9

that "impose personal liability on the defendant." *Pereira v. Farace,* 413 F.3d 330, 340 (2nd Cir. 2005) (emphasis in original) (quoting *Great-West Life & Annuity Ins. Co. v. Knudsen,* 534 U.S. 204, 214 (2002)).[4]

Here, Vanderbilt does not seek damages or to impose liability on ICOS. The only remedy Vanderbilt seeks, as provided by the plain language of § 256 itself, is that this Court order the Commissioner of the Patent and Trademark Office to issue a certificate to correct inventorship of the patents-at-issue. 35 U.S.C. § 256. This remedy, if appropriate, would "restore" to Vanderbilt property that is currently in the exclusive possession of ICOS. Therefore, under the second prong of the Supreme Court's test, the remedy sought by Vanderbilt in this case is purely equitable in nature. *Pereira,* 413 F.3d at 340.

### G.     Balancing History and Remedy

On balance, the first two *Granfinanciera* factors discussed above indicate that Vanderbilt is not entitled to a jury trial under the Seventh Amendment. Therefore, it is unnecessary to reach the third prong of the test, whether Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as fact finder. *Granfinanciera,* 492 U.S. at 42. Under both prongs of the *Granfinanciera* test, an action under § 256 is purely equitable in nature. A § 256 statutory action is more similar to cases tried in the courts of equity of 18th-century England than cases tried in the courts of law, and the remedy sought is purely equitable in nature. An action under § 256, therefore, is classified as an equitable claim. Since no jury right attaches to equitable claims, Vanderbilt is not entitled to a jury trial under the Seventh Amendment to the U.S. Constitution. *Id.* at 42.

---

[4]  Also quoted by unpublished *Cantor v. Perelman,* No. 97-586, 2006 WL 318666, at *8 (D. Del. Feb. 10, 2006).

**H.    The Federal Circuit has confirmed that 35 U.S.C. § 256 actions are not tried to a jury**

The Federal Circuit recently confirmed that a plaintiff "would not be entitled to a jury trial on [a] § 256 inventorship claim standing alone . . . ." *Shum v. Intel Corp. et al.*, No. 2006-1249, 2007 U.S. App. LEXIS 20184, at * 16-17 (Fed. Cir. Aug. 24, 2007).

In *Shum*, the plaintiff brought an action under § 256 and various state-law claims. The district court first held a bench trial on inventorship and found that plaintiff had failed to prove that he was an inventor of the patents-at-issue. Defendants' summary judgment motion on the state-law claims was subsequently granted. Plaintiff appealed, arguing that his constitutional right to a jury trial was violated.

On appeal, the Federal Circuit held that it was an abuse of discretion for the district court to hold a bench trial first on the equitable claim of inventorship because common factual issues supported the equitable inventorship claim and the legal state-law fraud claims. *Id.* at *17. The court explained that, "[w]hile [plaintiff] would not be entitled to a jury trial on the 256 inventorship claim standing alone, given the co-pendency of the asserted fraud claim, a jury should determine the facts regarding inventorship." *Id.* at *16-17. Accordingly, the Federal Circuit held that the decision to try the inventorship claim to the bench before trying the state-law claim to the jury ran afoul of the Seventh Amendment, and thus was an abuse of discretion. Consequently, the Federal Circuit remanded for a trial before a jury. *Id.* at *17. The Federal Circuit expressly stated that "[i]n analyzing inventorship, a district court makes underlying findings of fact and then decides inventorship as a matter of law."[5]

**I.    District Courts' treatment of 35 U.S.C. § 256 actions**

Various district courts have treated actions to correct inventorship under 35 U.S.C. § 256

---

[5]   Citing *Ultra-Precision Mfg. v. Ford Motor Co.*, 411 F.3d 1369, 1376 (Fed. Cir. 2005).

as equitable claims and have held that parties are not entitled to a jury trial for resolution of an inventorship dispute. *See, e.g., Whiteside Biomechanics, Inc. v. Samofar Danek Group*, 88 F. Supp. 2d 1009, 1012 (E.D. Mo. 2000) (including correction of inventorship in list of equitable issues properly resolved by bench trial); *K-Tek Corp. v. Lovett*, 924 F. Supp. 57, 57-8 (M.D. La. 1996) (stating that the plaintiff sought "equitable relief commanding the [Patent Office] to correct the inventorship of the patent"); *U.S. Indus., Inc. v. Norton Co.*, 184 U.S.P.Q. 187, 189 (N.D.N.Y. 1974) (correction of inventorship statute is "essentially an equitable rule"); *Yeda v. Imclone*, 443 F. Supp. 2d 570, 573 (S.D.N.Y. 2006) ("The Court held a bench trial to determine inventorship."); and *Marketel Intern., Inc. v. Priceline.com*, 138 F. Supp. 2d 1210, 1213 (N.D. Cal. 2001) (citing *Ethicon, Inc. v. United States Surgical Corp.*, 921 F. Supp. 901, 904-05 (D. Conn. 1995)).

District courts have treated 35 U.S.C. § 256 claims as analogous to the equitable defense of inequitable conduct. *Ethicon, Inc. v. U.S. Surgical Corp.*, 921 F. Supp. 901, 905 (D. Conn. 1995); *General Tire & Rubber Co. v. Watson-Bowman Associates, Inc.*, 74 F.R.D. 139, 141 (D. Del. 1977); *Gardco Mfg., Inc. v. Herst Lighting Co.*, 820 F.2d 1209, 1212 (Fed. Cir. 1987).

## V.    CONCLUSION

Under both prongs of the test set forth by the Supreme Court in *Tull* and *Granfinanciera*, an action under 35 U.S.C. § 256 is purely equitable in nature, and no right to a jury trial attaches to equitable claims under the Seventh Amendment. The Federal Circuit recently confirmed that § 256 actions are equitable claims which do not give rise to a right to a jury trial. And many district courts have treated actions to correct inventorship under 35 U.S.C. § 256 as purely equitable claims that do not give rise to a right to a jury trial.

Vanderbilt is not entitled to a jury trial in this § 256 action. Consequently, its jury demand should be stricken and its motion to "correct" the docket should be denied.

Date:  October 26, 2007

Richard K. Herrmann #405
Mary B. Matterer #2696
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Tel: (302) 888-6800

Kevin M. Flowers
Thomas I. Ross
Elliot C. Mendelson
Rashmi V. Gupta
MARSHALL, GERSTEIN & BORUN LLP
6300 Sears Tower
233 S. Wacker Drive
Chicago, Illinois  60606-6357
Tel:  (312) 474-6300
Fax:  (312) 474-0448

*Counsel for Defendant ICOS Corporation*