# EXHIBIT 10

# EXHIBIT 10

## Vanderbilt University v. ICOS Corporation, No. 05-506 SLR
## Vanderbilt's Statement of Intended Proofs

Vanderbilt respectfully submits the following list of what it intends to prove at trial. In addition to the items identified below, Vanderbilt intends to prove the matters identified in its interrogatory answers and expert reports. Vanderbilt also intends to offer proof on the issues of fact and issues of law identified by Vanderbilt and ICOS in the body of the Pretrial Order. Vanderbilt also intends to offer proof to rebut the items on which ICOS may seek to offer proof, and Vanderbilt reserves the right to amend and supplement this statement in response to ICOS's further pre-trial activities. Moreover, Vanderbilt reserves the right to supplement this Statement of Intended Proofs in response to any subsequently-received discovery. Regarding proof to be presented by expert testimony, Vanderbilt incorporates by reference the expert reports of its experts.

## INTENDED PROOFS REGARDING THE INVENTORSHIP OF THE PATENTS-AT-ISSUE

### I. The Vanderbilt Scientists made independent conceptual contributions to claims 1-8, 10 and 12-13 of the '006 Patent.

1. Vanderbilt conceived that a PDE-5 inhibitor derived from following their conceptions would be effective in treating male impotency.

2. The Vanderbilt Scientists conceived of novel ways to modify cGMP to increase its inhibitory activity vis-à-vis PDE-5.

3. Vanderbilt communicated their conceptions relating to the chemical structure of the Tadalafil molecule to Glaxo from 1991-1994.

4. Glaxo employed Vanderbilt's conceptions in the conception of the Tadalafil molecule.

## II. The Vanderbilt Scientists Communicated to Glaxo their conception that a PDE-5 inhibitor derived from following their conceptions would be effective in treating male impotency.

1. Vanderbilt communicated to Glaxo from 1991-1993 the novel concepts that (a) the structure of a PDE-5 inhibitor must closely mimic the structure of the cGMP molecule and, (b) that the attachment of bulky, hydrophobic and electron donating groups of substituents to PDE-5 inhibitors at a position thereon analogous to the 8 position of cGMP would significantly increase the potency of the inhibitor.

2. Vanderbilt communicated to Glaxo from 1992-1993 the novel concepts that (a) PDE-5 inhibitors enhanced by the attachment of bulky, hydrophobic and electron donating substituents at a position analogous to the 8 position on the cGMP molecule would be effective in treating male impotence, (b) that the a key substituent on the molecule must also be "hydrophobic" in order to add potency and successfully restrict the specificity thereof to PDE-5 and (c) the spatial orientation of the appended hydrophobic group is critical for potency of the inhibitor.

3. Vanderbilt communicated to Glaxo the novel concept that from 1990-1991 the novel concept that (a) appending electron-donating groups to the structure of a PDE-5 inhibitor's phenyl ring will result in increased potency with respect to activating PKG and (b) the presence of electron-withdrawing groups to the molecule decreased potency.

4. Vanderbilt's independent conceptions discussed in Sec. II, 1-3 above (a) were communicated to Glaxo and (b) are reflected in the "R2" substituent described in Claim 1 of each of the Patents-at-Issue and the resulting structural relationship between that substituent and the beta carboline molecule.

### III. Alan Daugan was not the sole inventor of the Patents-at-Issue.

1. The number of complex scientific disciplines that were necessary to develop the Patents-at-Issue could not have been invented by a sole inventor.

2. Dr. Daugan admits that he did not conceive of the use of the patented compounds for the treatment of male impotence or ED.